UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
JACKSON DIVISION

WILLIAM G. SCOTT                                                    PETITIONER

V.                                              CIVIL ACTION NO. 3:10CV421 DPJ-FKB

RON KING                                                          RESPONDENT

ORDER

This petition for writ of habeas corpus is before the Court on the Report and

Recommendation of Magistrate Judge F. Keith Ball after referral of hearing by this Court.  Judge

Ball, having reviewed the petition, response, traverse, and the state-court record, recommended

that habeas relief be denied.  Petitioner William G. Scott filed an objection, and Respondent Ron

King filed a response.  The Court, having considered the Report and Recommendation, as well as

the parties' filings, concludes that Judge Ball's findings of should be adopted.

I.        Background[1]

Petitioner William G. Scott was convicted of capital murder in the Circuit Court of Hinds

County for the shooting of Paula Kay Dinkins, manager of the Cash Depot in Jackson,

Mississippi.  Scott was sentenced to life imprisonment without the possibility of parole.  He

appealed the conviction, and the Mississippi Court of Appeals reversed the conviction and

remanded the case for a new trial.  *Scott v. State*, 8 So. 3d 871 (Miss. Ct. App. 2008).  But the

Mississippi Supreme Court granted a writ certiorari, reversed the decision of the court of appeals,

and reinstated the judgment.  *Scott v. State*, 8 So. 3d 855 (Miss. 2008).  Scott then filed a petition

---

[1]Judge Ball succinctly laid out the factual and procedural history of this petition, as well
as the evidence presented at trial, all of which is adopted and incorporated in this Order.

for writ of certiorari with the United States Supreme Court and a motion for post-conviction

relief, both of which were denied.  The matter is now before this Court under 28 U.S.C. §2254.

In his petition, Scott raises the following grounds for relief:

> 1.      He was denied his due process right to counsel and his right to be present at all critical stages of the trial.
>
> 2.      The trial judge's failure to recuse herself resulted in a denial of due process.
>
> 3.      Scott's Sixth Amendment right to a speedy trial was violated.
>
> 4.      Various acts and omissions by his defense attorney constituted ineffective assistance of counsel.

Judge Ball considered each ground for habeas relief and recommended dismissal of the petition

with prejudice.

II.     Objection

Petitioner's objection is largely a restatement of arguments he raised in his petition and

traverse, which were appropriately rejected by Judge Ball.  There is no need to repeat that

thorough analysis, so this Order addresses a few discrete points raised in the objection.

A.      Standard

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), and more

particularly 28 U.S.C. § 2254(d), "imposes a highly deferential standard for evaluating

state-court rulings and demands that state-court decisions be given the benefit of the doubt."

*Felkner v. Jackson*, ⸺ U.S. ⸺, 131 S. Ct. 1305, 1307 (2011) (citations omitted).  Pursuant to

the AEDPA, federal-habeas relief cannot be granted "unless the challenged state court

proceeding resulted in: (1) 'a decision that was contrary to, or involved an unreasonable

2

application of, clearly established Federal law, as determined by the Supreme Court of the United

States', 28 U.S.C. 2254(d)(1); or (2) 'a decision that was based on an unreasonable determination

of the facts in light of the evidence presented in the State court proceeding.'" *Foster v.*

*Quarterman*, 466 F.3d 359, 368 (5th Cir. 2006) (quoting *Schaetzle v. Cockrell*, 343 F.3d 440,

443 (5th Cir. 2003)).

> A state-court decision is contrary to clearly established federal law when it
> "arrives at a conclusion opposite to that reached by [the Supreme Court] on a
> question of law or if the state court decides a case differently than [the Supreme
> Court] has on a set of materially indistinguishable facts."  A state-court decision
> fails the "unreasonable application" prong if it "identifies the correct governing
> legal rule from [the Supreme Court's] cases but unreasonably applies it to the
> facts of the particular state prisoner's case," or when it "extends a legal principle
> from [Supreme Court] precedent to a new context where it should not apply or
> unreasonably refuses to extend that principle to a new context where it should
> apply."

*Trottie v. Stephens*, 720 F.3d 231, 240 (5th Cir. 2013) (quoting *Williams v. Taylor*, 529 U.S. 362,

407, 413  (2000) (internal citations omitted)).

"[A] federal habeas court may not issue the writ simply because that court concludes in

its independent judgment that the relevant state-court decision applied clearly established federal

law erroneously or incorrectly."  *Williams*, 529 U.S. at 411.  Even "clear error" is not sufficient.

*Lockyer v. Andrade*, 538 U.S. 63, 75 (2003) (holding that ruling must be "objectively

unreasonable" and that "[i]t is not enough that a federal habeas court, in its independent review

of the legal question, is left with a firm conviction that the state court was erroneous") (citation

and quotations omitted).  Rather, the application must be not only incorrect, but also "objectively

unreasonable."  *Williams*, 529 U.S. at 409.  Objective unreasonableness will not be found if

"fairminded jurists could disagree on the correctness of the state court's decision." *Harrington v. Richter*, 131 S. Ct. 770, 786 (2011) (citation and quotations omitted).

Finally, "'a determination of a factual issue made by a State court shall be presumed to be correct,'" and that presumption must be rebutted "'by clear and convincing evidence.'" *Sells v. Stephens*, — F. App'x —, 2013 WL 3784348, at *11 (5th Cir. July 22, 2013) (quoting 28 U.S.C. § 2254(e)(1)). "These intersecting standards allow us to grant habeas relief based on a fact issue only if the petitioner demonstrates both an incorrect factual determination by clear and convincing evidence *and* that it compromised the objective reasonableness of the court's corresponding decision." *Id.* (emphasis in original).

B.       Grounds

1.       Ground One:  Ex Parte Communications

Two ex parte hearings between Scott's counsel and the trial court lie at the heart of this petition.  In them, counsel sought leave to withdraw because Scott had informed his attorney that he committed the offense and intended to commit perjury.  The trial court denied the attorney's motions to withdraw as counsel and attempted to set parameters for counsel's involvement in Scott's anticipated narrative testimony.  Scott contends that he was denied the right to counsel and the right to be present during these hearings.  Petition [1] at 8.  Judge Ball rejected both arguments under the AEDPA's highly deferential standards.

a.       Proper Standard

In his objection, Scott insists that a different standard should apply to this ground for relief because the Mississippi appellate courts never adjudicated these arguments on the merits. Scott correctly observes that the Mississippi Court of Appeals decided that he was entitled to a

new trial on other grounds and therefore never reached these issues.  Objection [18] at 4.  He continues that the Mississippi Supreme Court declined to rule on the argument in his motion for post-conviction relief, finding the ground was barred under the res judicata portions of the statute governing post-conviction relief.  Objection [18] at 4.  Thus, according to him, the issue was never decided.

Scott is only partially correct.  Though neither appellate court analyzed ground one, the Mississippi Supreme Court nonetheless rejected Scott's appeal on these issues when it reversed the Mississippi Court of Appeals.  And it reiterated that holding on post-conviction review when it found these claims barred by res judicata.  *See* Miss. Code Ann. § 99-39-21(3) (stating res judicata shall apply to all issues, factual and legal, decided at trial and on direct appeal).  Thus, even though the court never directly addressed ground one in a written opinion, the allegations were before the court, and the court reached the ultimate conclusion that Scott's grounds for appeal lacked merit.

Significant to Scott's objection, the failure to specifically address ground one does not alter the deference this Court must give the holdings because a state court need not consider and discuss "every angle of the evidence."  *Neal v. Puckett*, 286 F.3d 230, 246 (5th Cir. 2002).  As often stated, "[w]e review only the ultimate legal determination by the state court—not every link in its reasoning."  *Trottie*, 720 F.3d at 241 (5th Cir. 2013) (citation omitted).   "In reviewing a state court habeas decision reached without explanation, a federal court must determine what arguments or theories could have supported the state court's decision, and then ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of the Supreme Court."  *Id*. (citation and punctuation omitted).

5

And the presumption of correctness afforded state-court findings of fact "not only applies to explicit findings of fact, but it also applies to those unarticulated findings which are necessary to the state court's conclusions of mixed law and fact." *Valdez v. Cockrell*, 274 F.3d 941, 948 n.11 (5th Cir. 2001). Judge Ball correctly applied the AEDPA's deferential standard.

> b.      Right to Counsel

Turning to the substance of ground one, Judge Ball found there was no merit to Scott's claim that he was denied his right to counsel during the ex parte proceedings, citing *Nix v. Whiteside*, 475 U.S. 157, 173 (1986). In *Nix*, the attorney threatened to withdraw from representation if the defendant insisted on committing perjury. *Nix*, 475 U.S. at 161. The United States Supreme Court denied habeas relief premised on a claim of ineffective assistance of counsel, noting that the "right to counsel includes no right to have a lawyer who will cooperate with planned perjury." 475 U.S. at 173.

Scott insists that Judge Ball incorrectly cited *Nix* because the analysis assumes Scott actually told his attorney he planed to commit perjury—something he denies. But because the Mississippi Supreme Court never explained its holding, this Court must anticipate "what arguments or theories could have supported the state court's decision" and then ask whether they are unreasonable under the AEDPA. *Trottie*, 720 F.3d at 241. Here, *Nix* is the logical starting point. And factually, the court could have easily credited the statements of an officer of the court over the post-verdict protestations of someone facing life in prison, especially when the alleged statements to counsel mirrored the defendant's pre-trial confession. In any event, Scott testified with his lawyer's assistance so there was no prejudice. Under the deferential AEDPA standards, the Court agrees with the Report and Recommendation on this ground for relief.

6

c.      Due-Process Right to be Present

Scott also claims that he was denied the due-process right to be present during the conferences.  On this point, Scott claims that Judge Ball should have applied *Kentucky v. Stincer*, 482 U.S. 728 (1987), rather than *United States v. Gagnon*, 470 U.S. 522 (1985).   Objection [18] at 6.  But both *Stincer* and *Gagnon* apply the same rule announced in *Snyder v. Massachusetts*—that a defendant has a due process right "to be present in his own person whenever his presence has a relation, reasonably substantial, to the fulness of his opportunity to defend against the charge."  291 U.S. 97, 105–06 (1987).  This is the standard Judge Ball applied. In any event, *Stincer* found no due-process violation despite the defendant's exclusion from hearings to determine the competency of two witnesses.  *Stincer*, 482 U.S. at 746.  *Stincer* fails to show that the Mississippi Supreme Court's holding violated the high standards of the AEDPA.

The only other argument worth mentioning from Scott's objection is his contention that the Court must apply *McKissick v. United States*, 379 F.2d 754 (5th Cir. 1967).  Petition [1] at 46; Objection [18] at 9–10.  But the focus under the AEDPA is on the decisions of the United States Supreme Court, not the Fifth Circuit Court of Appeals.  Regardless, *McKissick* is easily distinguishable.  Judge Ball applied the correct legal standard, and there is no need to add anything further to his analysis.  Scott has not identified relevant authority indicating that the state court's rejection of ground one violated the AEDPA.

2.      Ground Two:  Recusal of Trial Judge

Scott also seeks habeas relief based on the trial judge's failure to recuse herself after having been told that Scott confessed to his attorney.  "'Trial before an unbiased judge is essential to due process.'"  *Public Citizen, Inc. v. Bomer*, 274 F.3d 212, 217 (5th Cir. 2001)

7

(quoting *Johnson v. Mississippi*, 403 U.S. 212, 216 (1971)). "Nevertheless 'only in the most extreme of cases' does the Due Process Clause require disqualification of a judge." *Id.* (quoting *Aetna Life Ins. Co. v. Lavoie*, 475 U.S. 813, 821, 825–26 (1986)).

The Mississippi Supreme Court addressed this issue at length, concluding that where the trial judge is not the ultimate trier of fact, his or her knowledge that the defendant confessed would not require recusal. *Scott*, 8 So. 3d at 860.  It further noted that trial judges often learn of written confessions during the course of criminal proceedings yet preside over the case. *Id*. Scott disagrees and relies on *Butler v. United States*, 414 A.2d 844 (D.C. 1980).  But *Butler* is not from the United States Supreme Court and is otherwise distinguishable because it was a bench trial.  The state court's rejection of this claim was not unreasonable.  *See Liteky v. United States*, 510 U.S. 540, 551–52 (1994) (explaining extrajudicial source limitation to 28 U.S.C. § 455 (b)(1)).

3.    Ground Three:  Speedy Trial

In ground three, Scott alleges that he was denied his right to a speedy trial, a claim which is analyzed under the four-prong test set forth in *Barker v. Wingo*, 407 U.S. 514 (1972).  The factors to be weighed are (1) length of the delay, (2) reason for the delay, (3) the accused's assertion of his right to a speedy trial, and (4) prejudice to the accused. *Id.* at 530.  With the exception of the first factor, the Mississippi Supreme Court found that the factors weighed against Scott.

In his objection, Scott takes issue with the Mississippi Supreme Court's holding regarding the final three factors and with Judge Ball's analysis of them.  As a general observation, the Mississippi Supreme Court clearly applied the correct legal standard.

8

Accordingly, Scott must show an unreasonable application of the facts to the *Barker* test. Moreover, the holding itself includes several findings of fact. While the Court could simply observe that Scott falls short of his burden under the AEDPA on such questions and adopt the Report and Recommendation, it will briefly address a few of the more specific objections regarding the third and fourth *Barker* factors.

As to the third factor—assertion of the right—Scott argues that his June 7, 2004 pro se motion for substitution of counsel should have been construed as an assertion of his speedy trial right. Particularly, Scott points to his statement that he was "prepared to go to trial." Objection [18] at 23. The Mississippi Supreme Court rejected this characterization, noting that "Scott cannot be considered to have asserted his right to a speedy trial when he was asking for continuances to delay his trial on the same day he was requesting a dismissal for failure to provide a speedy trial." *Scott*, 8 So. 3d at 863. This holding seems more than reasonable, especially when Scott continued filing motions to obtain discovery. *See* Mot. to Compel Discovery, Appendix "Q" (Aug. 10, 2004); Mot. to Subpoena Witnesses, App. "R" (Oct. 7, 2004) (asking the trial court to subpoena witnesses "to appear at trial when such date is set by the court"). For this reason, and those stated in greater detail by Judge Ball, this factor was properly determined.

As for the final speedy trial concern—prejudice—Judge Ball aptly addressed the issues Scott again pursues, but the Court will briefly mention a couple of Scott's points. First, Scott argues that Judge Ball contradicted himself by finding insufficient prejudice yet acknowledging that Scott "experienced anxiety and difficulties as a result of the length of his pretrial detention." R&R [14] at 17. But that observation merely emphasizes that the *Barker* prejudice factors are

9

weighed, and the factors Judge Ball acknowledged are not as serious as the factor he found

missing—impairment of the defense.  *Barker*, 407 U.S. at 532  ("Of these, the most serious

[prejudice factor] is the last. . . .").  The state court's application of the law and its weighing of

the factors receives considerable deference.  Scott fails to demonstrate that the holding was

unreasonable.

Looking then to the final prejudice factor, Scott claims that Judge Ball failed to

appropriately consider the impediment to his ability to locate witnesses.  While not laid out in his

objection, Scott did list several witnesses in his traverse, including his three former roommates,

Demarco Stewart, Zachary Davis, and Lamin Williams, who he claims would have provided alibi

testimony.  Traverse [8] at 37.[2]  The state-court record reflects that Scott's attorney was unable to

locate Stewart; the prosecutor located Davis, who was living in Illinois; and Williams was

subpoenaed by the prosecutor and reported for trial.  State Court Record [7-3] at 22–24.  So the

delay's impact on his ability to find Davis and Williams is not apparent.

And in any event, Judge Ball correctly observed that Scott failed to demonstrate to the

state court that these witnesses would actually provide an alibi as he now claims.  Under those

circumstances, the state court's ruling was reasonable.  *See Cowart v. Hargett*, 16 F.3d 642, 648

(5th Cir. 1994) (declining to find actual prejudice resulting from the alleged inability to call an

alibi witness and noting "such arguments are generally viewed with disfavor when, as here, the

---

[2]According to Scott, the remaining witnesses listed would have testified about the crime
scene, the timeline of events, and "other possible suspects."  Traverse [8] at 36–37.  Notably,
Scott's evidence of "other possible suspects" consists of a statement by the gas station clerk
working next door to the Cash Depot on the day of the shooting, that an African-American man
with sweat running down his face—in July—came in the store to purchase cigarettes.  Objection
[18], App. "B."  Such claims fail to demonstrate prejudice.

allegation is not supported by the production of the witness who allegedly would have altered the outcome of the trial"); *see also Divers v. Cain*, 698 F.3d 211, 217 (5th Cir. 2012) ("'Very few petitioners' can make the requisite showing, and due to the somewhat indeterminate and fact-intensive nature of the speedy trial right, our 'always-substantial deference is at an apex.'" (quoting *Amos v. Thornton*, 646 F.3d 199, 204–05 (5th Cir. 2011)). Habeas relief based on ground three was properly denied.

4.      Ground Four:   Ineffective Assistance of Counsel

Ineffective assistance claims are analyzed using the test set out in *Strickland v. Washington*, which is "highly deferential." 466 U.S. 668, 689 (1984). And "[e]stablishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult." *Harrington*, 131 S. Ct. at 788. "When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard." *Id.* In other words, the standard is "doubly deferential." *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009). Scott argues in favor of the application of the standard set forth in *Lowery v. Caldwell*, 575 F.2d 727 (9th Cir. 1978), a Ninth Circuit Court of Appeals case that pre-dates *Strickland*. But as the Court has explained, the focus under § 2254(d)(2) is on the decisions of the United States Supreme Court. Judge Ball's analysis of this issue was thorough and requires no additional comment.

III.     Conclusion

In sum, the Court finds that the Report and Recommendation of Magistrate Judge F. Keith Ball should be adopted in its entirely and this action should be dismissed with prejudice. Arguments not specifically addressed in this Order were considered by the Court and would not

change the result.  A separate judgment will be entered in accordance with Federal Rule of Civil

Procedure 58.

       **SO ORDERED AND ADJUDGED** this the 24th day of September, 2013.

                           s/ *Daniel P. Jordan III*
                           UNITED STATES DISTRICT JUDGE